UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAMPAGE LLC,<br><br>      Plaintiff,<br><br>v.<br><br>GLOBAL GRAPHICS SE, GLOBAL GRAPHICS SOFTWARE INC., AND JOHN DOE #1,<br><br>      Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 16-cv-10691-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Rampage LLC ("Rampage") filed this lawsuit against Global Graphics SE, Global Graphics Software Inc. (collectively "Global Graphics"), and John Doe #1 alleging three counts of patent infringement. Rampage's amended complaint alleges that John Doe #1 directly infringed on a patent held by Rampage (Count I), and that Global Graphics committed induced patent infringement (Count II) and contributory patent infringement (Count III). [ECF No. 15]. Now before the Court is Global Graphics' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 16]. For the reasons stated below, the Court grants the motion to dismiss as to Count I, without prejudice and with leave to amend if needed after discovery, and denies the motion as to Counts II and III.

**I.     BACKGROUND**

Rampage is the sole owner of U.S. Patent No. 9,053,410 (hereinafter the "'410 Patent"), entitled "Raster Image Processor With Printhead Profile Compensation For a Multi-Level Digital

Printing Machine." [ECF No. 15 at ¶ 10]. Mitchell J. Bogart is listed as the inventor.[1] Id. This patent is for a new type of printing technology that presents "[a] system and method of calibration, screening, and compensation . . . for multiple gray-level digital presses." [ECF No. 15-1 at 1]. This new system for distributing ink from inkjet printing presses deals with an issue known as the "Screening Problem." [ECF No. 15 at ¶ 23]. The "Screening Problem" arises because

> [m]ost printing software assumes you can print a perfect grid of dots. In [practice] on an inkjet press there are often variations between the control system's aim point for an ink drop and where it actually lands. In addition the interaction of the ink drops with the media may introduce variations. . . . All these variables, in combination or separately, may lead to changes in halftone dots' size or shape away from the intended ideal, which in turn might lead to artifacts and errors that are visible to the naked eye in the finished print.

Id. at ¶ 24.

The '410 Patent covers processes that offer a solution to the Screening Problem. Id. at ¶¶ 26, 28. Bogart's solution, known as the "Multi-Level Screening Solution," "change[s] the size of the tonal sub-ranges based upon density measurements of the actual dot sizes for each colorant" and "overlap[s] each tonal sub-range by a small amount, for example two percent." Id.

Rampage alleges that Global Graphics knew of the patent application by March 5, 2015, perhaps due to its publication. Id. at ¶ 47. On June 23, 2015, someone affiliated with Rampage—the complaint does not mention who—emailed Global Graphics and its Chief Technology Officer, Martin Bailey, informing them of the '410 Patent, and Mr. Bailey confirmed receipt of the email. Id. In approximately the same time frame, Global Graphics developed a software-based raster image processor for use with a digital press that it sells under the mark "Harlequin Host Renderer SDK" (hereinafter the "Accused Product"). Id. at ¶ 14. The Accused Product has

---

[1] Although not discussed in the complaint, at the motion hearing Rampage stated that Bogart is the manager of Rampage. [ECF No. 26 at 24].

four types of screening methods that an operator may select: Harlequin multi-level screening, Harlequin Dispersed Screening, Harlequin Cross Modulated, and Harlequin Precision Screening. Id. at ¶ 15. Only the Harlequin multi-level screening option (hereinafter the "Accused Process") is at issue in this case. Rampage asserts that Global Graphics did not sell a multi-level screening option in any of its products until after Rampage contacted Global Graphics regarding the "Multi-Level Screening Solution" invented by Bogart. Id. at ¶ 28. Rampage believes that the Harlequin multi-level screening uses processes and methods covered in the '410 Patent, which forms the basis for the "Multi-Level Screening Solution." Id. at ¶¶ 29–43.

Rampage suspects that Global Graphics then sent the Accused Product to John Doe #1 for testing in the United States. Id. at ¶ 17. Rampage's belief that John Doe #1 has used, tested, or researched the Accused Product in the United States forms the basis for Count I. Id. at ¶¶ 20–45. Rampage's belief that John Doe #1 received the Accused Product from Global Graphics forms the basis for Counts II and III. Id. at ¶¶ 46–59. Rampage does not know the location or identity of John Doe #1, but believes that Global Graphics does know the location and identity of John Doe #1. Id. at ¶¶ 18–19. Rampage also does not have access to the source code for the Accused Product, which is a software product. Id. at ¶ 22. Without examining the source code, Rampage cannot determine exactly how the Accused Product's code is written, and how close it is to the '410 Patent. Id.

Rampage filed this suit on April 10, 2016 [ECF No. 1] and then filed an amended complaint on June 10, 2016 [ECF No. 15]. Global Graphics filed its motion to dismiss on June 24, 2016. [ECF No. 16]. Rampage filed an opposition on July 18, 2016. [ECF No. 23]. The Court held a hearing on the motion to dismiss on November 16, 2016.

**II.     STANDARD OF REVIEW**

The parties disagree as to what standard the Court must use to evaluate a motion to dismiss in the patent infringement context. The disagreement boils down to whether or not a complaint that follows Form 18 in the abrogated Appendix of Forms to the Federal Rules of Civil Procedure is sufficient, or whether a complaint must follow the more stringent requirements set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Before December 1, 2015, Form 18 in the Appendix of Forms provided a sufficient model complaint for direct patent infringement despite the Twombly and Iqbal decisions. Lyda v. CBS Corp., 838 F.3d 1331, 1337 n.2 (Fed. Cir. 2016). Form 18, however, did not suffice for indirect patent infringement, such as induced infringement or contributory infringement, after the decisions in Twombly and Iqbal were issued. In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1336 (Fed. Cir. 2012). Form 18 had only five requirements for a complaint alleging direct patent infringement:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

Lyda, 838 F.3d at 1338 (quoting In re Bill of Lading, 681 F.3d at 1334).

On December 1, 2015, amendments to the Federal Rules of Civil Procedure eliminated Rule 84 and the Appendix of Forms. Id. at 1337 n.2. When eliminating Rule 84 and the Appendix of Forms, the Advisory Committee explained "[t]he abrogation of Rule 84 does not alter existing pleading standards or otherwise change the requirements of Civil Rule 8." Fed. R. Civ. P. 84 (2015 Advisory Committee Note). "[W]hile it is possible the Form 18 pleading template may provide sufficient information to satisfy Twombly/Iqbal, such information may not

4

necessarily be sufficient . . . ." Tannerite Sports, LLC v. Jerent Enters., LLC, No. 6:15-cv-00180, 2016 WL 1737740, at *3 (D. Or. May 2, 2016).

No federal appellate court has yet addressed whether Form 18 or the Twombly/Iqbal standard governs the sufficiency of direct patent infringement claims, but the Court concludes that the Twombly/Iqbal standard is the correct standard for reviewing the counts in the first amended complaint in this case. The vast majority of district courts that have considered cases filed after the elimination of Form 18 agree that "a form that no longer exists can no longer control." Tannerite Sports, 2016 WL 1737740, at *3. There is "scant legal justification" for applying the Form 18 standard in the wake of the amendments. Id. at *4. Rampage argues that the Advisory Committee note may indicate that compliance with Form 18 continues to be sufficient, since the amendments were not intended to alter pleading standards. Setting aside any potential merits to this argument, the Advisory Committee Notes are not binding authority. See Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005); Tome v. United States, 513 U.S. 150, 160 (1995) (Advisory Committee Notes are merely "a respected source of scholarly commentary"). Rather, the Twombly/Iqbal standard governs all civil cases. Iqbal, 556 U.S. at 684. Use of the Twombly/Iqbal standard also promotes uniformity across the judicial system, Tannerite Sports, 2016 WL 1737740, at *4, whereas reliance on a now-abrogated form would only cause confusion and inconsistency.

Rampage cites to decisions issued after the elimination of Form 18 that nevertheless applied the less-demanding standard of review, but in those cases the complaint had been filed prior to the elimination of Form 18. See Lyda, 838 F.3d at 1337 n.2 (amended complaint filed in 2014, and case terminated on motion to dismiss in July 2015); Hologram USA, Inc. v. Pulse Evolution Corp., No. 2:14-cv-0772-GMN-NJK, 2016 WL 199417 (D. Nev. Jan. 15, 2016)

(PACER search shows Second Amended Complaint filed on January 30, 2015). Other district courts that have addressed this issue have decided that Form 18 does not control direct patent infringement claims, and applied the more demanding Twombly/Iqbal standard. See, e.g., Sunrise Techs., Inc. v. Cimcon Lighting, Inc., No. 15-cv-11545-NMG, 2016 WL 6902395, at *2 (D. Mass. Nov. 23, 2016); Deetz Family, LLC v. Rust-Oleum Corp., 4:16-cv-10790, 2016 WL 6662677, at *3 (D. Mass. Nov. 10, 2016); Footbalance Sys. Inc. v. Zero Gravity Inside, Inc., No. 15-cv-1058, 2016 WL 5786936, at *3 (S.D. Cal. Oct. 4, 2016); TeleSign Corp. v. Twilio, Inc., No. 16-cv-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016); Tannerite Sports, 2016 WL 1737740, at *3. Thus, the Court will also review Count I using the Twombly/Iqbal standard.

Under Twombly and Iqbal, to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege a claim for relief that is plausible on its face. Twombly, 550 U.S. at 570. Plausibility is a lower threshold than probability, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Under the Twombly/Iqbal standard, a complaint "does not need detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).

Assessing the plausibility of a claim is a two-step process. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor

of the plaintiff. Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Rodriguez-Reyes, 711 F.3d at 53 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

## III.  DISCUSSION

### A.  Count I (Direct Infringement by John Doe #1) Does Not Meet the Twombly/Iqbal Standard.

In Count I, Rampage alleges John Doe #1 is directly infringing on the '410 Patent by using the Accused Product. [ECF No. 15 at ¶¶ 42–45]. Global Graphics argues that this allegation is speculation, and insufficient to support a claim. [ECF No. 16-1 at 7–8]. Global Graphics specifically argues that, since Rampage cannot identify a single printer in the United States who uses the Accused Product, its claim fails under the Twombly/Iqbal standard. Id. at 8.

The statute governing direct infringement claims, 35 U.S.C. § 271(a), states: "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." Akamai Techs., Inc. v. Limelight Networks, Inc. (Akamai IV), 797 F.3d 1020, 1022 (Fed. Cir. 2015) (per curiam) (en banc), cert. denied 136 S. Ct. 1661 (2016). "Therefore, in applying Twombly and Iqbal after the elimination of Form 18, plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent." Sunrise, 2016 WL 6902395, at *2. The complaint must also allege the infringement occurred in

United States territory. Trs. of Columbia Univ. in City of New York v. Roche Diagnostics GmbH, 150 F. Supp. 2d 191, 201 (D. Mass. 2001).

In this case, Rampage has not met the Twombly/Iqbal standard for pleading direct infringement of the '410 Patent. The complaint alleges that John Doe #1 exists somewhere in the United States, has somehow received the Accused Product from Global Graphics, and has used the Accused Product for testing and product research. [ECF No. 15 at ¶¶ 20–45]. The allegation that testing has occurred in the United States appears frequently. Rampage offers two publications from Global Graphics, a brochure on the Harlequin Host Renderer SDK and a white paper on "Halftone Screen Optimization for Single-pass Inkjets," which both mention multi-level screening, as proof that Global Graphics has a printer somewhere in the United States using the Accused Product. See [ECF Nos. 15 at ¶¶ 14, 24; 15-3 at 3, 5; 15-4 at 2]. The two publications do not mention testing at all, nor does the amended complaint in any way substantiate the claim that testing has occurred in the United States. These publications, without more, are insufficient to support a plausible inference that a John Doe is conducting testing of a printer using the Accused Product within the United States. Count I is therefore dismissed for failure to meet the Twombly/ Iqbal standard, but because Counts II and III will proceed and facts about John Doe #1 may come to light in discovery, it is dismissed without prejudice.

**B.      Count II (Induced Infringement) Meets the Twombly/Iqbal Standard.**

In Count II in the amended complaint, Rampage alleges Global Graphics induced John Doe #1 to infringe upon the '410 Patent. [ECF No. 15 at ¶¶ 46–51]. Rampage claims that Global Graphics learned of the '410 Patent by at least June 23, 2015, when Rampage emailed Global Graphics about it. Id. Rampage further alleges that Global Graphics then intentionally contacted John Doe #1 to have him research, test, and/or evaluate the Accused Product despite knowing

that this would directly infringe claims 1 and 10 of the '410 Patent. Id. In response, Global Graphics argues that Count II is also too speculative. [ECF No. 16-1 at 9–10]. The Court, however, finds that Rampage has pled sufficient facts to survive a motion to dismiss on Count II.

The provision of the United States Code that addresses induced infringement, 35 U.S.C. § 271(b), states in full that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Courts have interpreted this language and determined that, "to state a claim for induced infringement, plaintiff must allege facts showing that defendant: (1) knew of the patent; (2) actively and knowingly aided and abetted another's direct infringement; and (3) possessed specific intent." Sunrise, 2016 WL 6902395, at *4; see also Walker Dig., LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 563 (D. Del. 2012). Accordingly, a claim for induced infringement requires an act of direct infringement. Sunrise, 2016 WL 6902395, at *4; see also Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011).

First, Rampage alleges with specificity the date that Global Graphics knew of or should have known of the '410 Patent because Rampage emailed both Global Graphics and its Chief Technology Officer about the patent on June 23, 2015. [ECF No. 15 at ¶ 47]. Rampage also alleges the Chief Technology Officer acknowledged receipt of the email. Id. This is sufficient to satisfy the first element of induced infringement for the purposes of a motion to dismiss.

Second, Rampage alleges that Global Graphics contacted John Doe #1 to have it use the Accused Product for testing and research, presumably before wider marketing. Id. A court can infer a direct infringement based on such allegations:

> Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more. To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.

In re Bill of Lading, 681 F.3d at 1336 (emphasis in original).[2] Courts in this district have applied this relaxed standard of pleading for induced infringement. See Sunrise, 2016 WL 6902395, at *3 ("In its amended complaint, plaintiff avers that defendant markets its accused products by depicting a hypothetical customer using the products in a manner that infringes the . . . patent. Such allegations are sufficient to allow an inference that a direct infringer exists."); Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 57-58 (D. Mass. 2014) (although the complaint was largely conclusory, on a motion to dismiss it was sufficient to show that any of many possible yet unnamed purchasers of the infringing products were direct infringers).

Rampage asserts that Global Graphics gave the Accused Product to at least one customer in the United States, John Doe #1, for research and testing. [ECF No. 15 at ¶ 17]. Rampage repeatedly asserts that Global Graphics knows the identity of John Doe #1. Id. at ¶ 19. This is sufficient for this Court to infer that an unknown customer is using the Accused Product. At the hearing, counsel for Global Graphics acknowledged that these types of allegations are sufficient for the purposes of pleading induced infringement. [ECF No. 26 at 17]. Rampage will likely find evidence of John Doe #1's direct infringement or lack thereof through discovery, but for the purposes of a motion to dismiss, Rampage has pled sufficient facts to satisfy the second element of induced infringement.

Third, Rampage alleges that Global Graphics contacted John Doe #1 with the intent to induce infringement of the '410 Patent via John Doe #1's use of the Accused Product. [ECF No. 15 at ¶ 49]. "[S]pecific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement."

---

[2] Although In re Bill of Lading was largely superseded by the abolition of Rule 84 and Form 18, see Richtek Tech. Corp. v. uPi Semiconductor Corp., 2016 WL 1718135, at *2 (N.D. Cal. April 29, 2016), this aspect of the decision was not affected.

Ricoh Co. v. Quanta Comput. Inc., 550 F.3d 1325, 1342 (Fed. Cir. 2008). In this case, Rampage alleges both knowledge of the '410 Patent and intent to cause infringement of that patent. [ECF No. 15 at ¶¶ 46–51]. Therefore, for the purposes of a motion to dismiss, Rampage has satisfied the third element of induced infringement, thus fulfilling the elements of induced infringement in Count II.

### C. Count III (Contributory Infringement by Global Graphics) Satisfies the Twombly/Iqbal Standard.

In Count III, Rampage alleges that Global Graphics committed contributory patent infringement. Rampage alleges that Global Graphics knew John Doe #1 would directly infringe upon the '410 Patent if it used the Accused Product on a digital press or ran a digital press with the Accused Process on it. Rampage further alleges that there is no substantial non-infringing use for the Accused Process. Global Graphics argues that Count III is too speculative and vague to meet the requirements of the Twombly/Iqbal standard. Global Graphics also argues that the Accused Product and the '410 Patent are different technologies. [ECF No. 16-1 at 8–13]. In this case, Rampage has made sufficient allegations to survive the Twombly/Iqbal standard.

The statute pertaining to contributory patent infringement, 35 U.S.C. § 271(c), states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

There are four elements to a contributory infringement claim. "To establish contributory infringement, the patent owner must show . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial

11

noninfringing uses, and 4) that the component is a material part of the invention." <u>Fujitsu, Ltd. v. Netgear Inc.</u>, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Rampage first alleges that John Doe #1 directly infringed upon the '410 Patent by using the Accused Product and the Accused Process. "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." <u>Dynacore Holdings Corp. v. U.S. Philips Corp.</u>, 363 F.3d 1263, 1272 (Fed. Cir. 2004). As with inducement infringement, when pleading contributory infringement, it is sufficient that a complaint allege the existence of as-yet-unknown direct infringers to satisfy the direct infringement element of contributory infringement. <u>See</u> <u>Conair Corp. v. Jarden Corp</u>., No. 13-cv-6702, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014) (in a contributory infringement claim, "by alleging the existence of customers whose use of Jarden's coffee machines allegedly infringed the '972 patent, Conair has also sufficiently alleged the existence of direct infringement by those customers"); <u>TSI, Inc. v. Azbil BioVigilant, Inc.</u>, No. 12-cv-0083, 2012 U.S. Dist. LEXIS 60519, at *2 (D. Ariz. May 1, 2012) (denying motion to dismiss where plaintiff did not name any directly infringing customers in a contributory claim but alleged that such customers existed). As is the case with Count II, there are sufficient allegations in the complaint as a whole to satisfy this first element of contributory infringement in Count III for the purposes of a motion to dismiss.

Second, as discussed above, Rampage alleged that it informed Global Graphics of the '410 Patent via email on June 23, 2015. [ECF No. 15 at ¶ 47]. This satisfies the second element of contributory infringement for the purposes of a motion to dismiss.

Third, Rampage claims that the Accused Process in the Accused Product has no substantial non-infringing use within the Unites States. The Accused Process is one of four settings available for digital printing in the Accused Product, the Harlequin Host Renderer SDK from Global Graphics, which is a software package. Rampage alleges that only the Accused Process infringes on the '410 Patent and not the three other settings. The fact that the Accused Process is only an option, however, does not absolve Global Graphics of liability for contributory infringement. "Software programs may be made up of smaller software units . . . each of which may also be a 'component' under the statute." Skyhook Wireless, Inc. v. Google, Inc., 159 F. Supp. 3d 144, 162 (D. Mass. 2015) (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1320 (Fed. Cir. 2009)). An infringer does not "escape liability as a contributory infringer merely by embedding [the infringing apparatus] in a larger product with some additional, separable feature before importing and selling it." Lucent Techs., Inc., 580 F.3d at 1320 (quoting Ricoh Co., 550 F.3d at 1337 (alteration in original)). In Lucent, the parties disagreed as to what portion of a software package constituted the "material or apparatus" at issue. Id. Microsoft, intervening on behalf of Gateway, argued that the whole software package including the infringing process was the "material or apparatus," whereas Lucent argued a specific "date-picker tool" was the apparatus at issue. Id. The Federal Circuit agreed with Lucent. Id.

Rampage makes a similar allegation here. [ECF No. 15 at ¶ 54]. Rampage contends that a specific part of the larger software package that is the Accused Product—namely, the Accused Process—infringes on the '410 Patent because the Accused Process has no non-infringing use. It does not matter that the broader Accused Product may have three other non-infringing uses.

Fourth, Rampage alleges that the Accused Process is a material and substantial part of the invention. Id. at ¶ 56. "It is sufficient at the pleading stage, for the Plaintiff to specify the

component and allege that it is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." Cellular Commc'ns Equip. LLC v. HTC Corp., Nos. 6:13-cv-507, 6:14-cv-759, and 6:14-cv-982, 2015 U.S. Dist. LEXIS 180375, at *40-41 (E.D. Tex. Oct. 30, 2015).

Rampage spends a large amount of space in its first amended complaint explaining how the Accused Product and the Accused Process use ideas from the '410 Patent. The allegations boil down to the following. Mitchell Bogart and Rampage patented a multi-level screening process for digital printing which dealt with the "Screening Problem." The multi-level screening process is part of the invention disclosed in the '410 Patent. Global Graphics, after June 23, 2015, released the Accused Product, which includes the Accused Process, "Harlequin multi-level screening." The multi-level screening process disclosed in the '410 Patent creates various tonal sub-ranges for printing color tones. The screening also changes the sub-ranges' spans to compensate for variations in the actual printing. Rampage alleges that the Accused Product from Global Graphics does all of this. Global Graphics never sold a multi-level screening option of any sort before the publication of the '410 Patent. Based on these allegations, Rampage has satisfied the fourth element of contributory infringement for the purposes of a motion to dismiss. As such, Rampage has sufficiently satisfied all elements of contributory infringement in Count III to survive a motion to dismiss.

    **D.**    **Global Graphics' Arguments on the Differences Between the '410 Patent and the Accused Product**

Lastly, Global Graphics argues that the Accused Product and the technology disclosed in the '410 Patent are different technologies. [ECF No. 16-1 at 9–12]. According to Global Graphics, the '410 Patent creates tonal sub-ranges for printing that do not overlap, whereas the multi-level screening method Global Graphics developed creates tonal sub-ranges that overlap

substantially. Id. at 11–12. Rampage responds that this unfairly reads the '410 Patent to always require contiguous, non-overlapping tonal sub-ranges when it does not. [ECF No. 23 at 19]. The Court finds Global Graphics' argument unavailing at this point in the proceedings. All factual allegations in the complaint must be accepted as true, and any logical inferences must be drawn in favor of the plaintiff. Frappier, 750 F.3d at 96. Here, Rampage has asserted sufficient facts to make a plausible allegation that the Accused Product infringes on the '410 Patent. Global Graphics' arguments to the contrary speak to a factual dispute that cannot be resolved at this stage. See Amgen, Inc. v. F. Hoffman-LaRoche, Ltd, 456 F. Supp. 2d 267, 274 (D. Mass. 2006) (refusing to rule, at motion to dismiss stage, as to whether importation of a drug that appeared to infringe on a patent was for uses within a statutory "safe harbor" or actually infringing, since that was a factual issue).

## IV. CONCLUSION

Accordingly, the Court hereby GRANTS the motion to dismiss [ECF No. 16] as to Count I, which is dismissed without prejudice. Plaintiff will be given leave to amend the complaint if new information obtained through discovery sufficiently supports Count I. The Court DENIES the motion to dismiss Counts II and III.

**SO ORDERED.**

January 19, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE